351 So.2d 1036 (1976)
Mildred P. JACOBS et al., Appellants,
v.
Patrick A. PETRINO et al., Appellees.
No. 75-1536.
District Court of Appeal of Florida, Fourth District.
September 3, 1976.
Rehearing Denied October 28, 1976.
*1037 Joel Miller, of Miller & Squire, Fort Lauderdale, for appellant McLaughlin.
John A. Friedman, Fort Lauderdale, for appellant Jacobs.
Frank E. Maloney, Jr., of Fleming, O'Bryan & Fleming, Fort Lauderdale, for appellees.
CARLTON, Associate Judge.
Appellants Mildred P. Jacobs and Wendell E. Jacobs, defendants in the trial court appeal a Final Judgment in favor of the Plaintiffs, Appellees here. McLaughlin Engineering Company, Appellant, Cross-defendant in the trial court, joined in the appeal.
Patrick A. Petrino and Olympia E. Petrino, his wife and Christine Romanello, the appellees, sued Mildred P. Jacobs and Wendell E. Jacobs, her husband for damages, allegedly resulting from a breach of warranty in a contract for sale of land in Broward County, Florida. Appellant, McLaughlin Engineering Company's Motion for a Separate Trial was granted and a trial between Petrino and Jacobs was held. A Final Judgment was entered in behalf of Plaintiff, Petrino and Jacobs appealed. Appellant, McLaughlin filed its joinder in the appeal.
*1038 The Appellant, Mildred P. Jacobs and Wendell E. Jacobs, her husband, entered into a contract to sell certain property for $425,000.00 located at Pompano Beach, Broward County, Florida, described as follows:
"Lots 1, 2 and 3, Block 1, MORANG AND PARKS SUBDIVISION in Pompano Beach, Florida, according to the Plat thereof as recorded in Plat Book 2, Page 28, of the Public Records of Broward County, Florida; and all of Block A, POMPANO BEACH BLOUNT BROS. SUBDIVISION, according to the Plat thereof as recorded in Plat Book 2, Page 43, of the Public Records of Broward County, Florida; together with a two-story apartment building, a two-story attached garage, a two-bedroom house, and a three-bedroom house located thereon; and including furnishings and furniture as per inventory attached hereto and made part hereof by reference." (emphasis supplied)
The deposit receipt contract in paragraph three states:
"3. Buyer agrees that he has seen the real estate which is the subject of this agreement and, in addition thereto, has seen a survey furnished to him by seller, which survey is dated 1952. The buyer, by signing hereinbelow, confirms that the real estate described hereinabove is the subject of this agreement, but that the original plats of the subject real estate may show a land size or area larger than that land presently owned by seller because of the erosion of the Atlantic Ocean. Accordingly, the parties do mutually agree, the seller and the buyer, that seller will deed to buyer according to the land description contained hereinabove but that seller makes no representation of ownership or use or otherwise pertaining to land so eroded. Sellers agree to attach hereto as part hereof the two surveys, each dated 1952, pertaining to the subject real estate and, although seller does not hereby intend to limit in any way the land being conveyed hereby, the intention of this paragraph of this agreement is that no representation as to eroded lands or accretion of lands is hereby made by seller to buyer, and seller agrees to convey all that seller owns of the subject real estate, subject to said erosion or accretion. Seller warrants that the concrete retaining wall shown on the two aforementioned surveys is the same one now on the property and that the dimensions from the westerly lot limits of said lots to said concrete retaining wall, as shown on the 1952 surveys, are approximately the same today." (emphasis supplied)
The deposit receipt contract in paragraph eleven further states:
"Seller agrees to furnish to buyer an updated survey, at seller's expense, showing the location of improvements on the subject real estate. Seller agrees to furnish same prior to the closing of this transaction and agrees that in event the said survey shows any encroachment, the same shall be treated as a title defect by the buyer. And in this connection, see Paragraph 1 hereinabove pertaining to the legal description of the land to be conveyed."
Pursuant to paragraph eleven an updated survey was made by Appellant, McLaughlin. This was the same engineering firm which had made the previous 1952 surveys. The surveys prepared in 1952 by Appellant, McLaughlin, did not indicate the length of the south boundary line. However, if the line is measured by scale it would be one hundred and thirty-eight feet. In the updated survey prepared prior to closing by Appellant, McLaughlin, it showed the dimension of the south boundary line at one hundred and eighty-three feet. Appellant, McLaughlin, had made an error in the latest survey by transposing the figures from 138 feet to 183 feet. Appellees discovered this error six months after closing and then filed for damages alleging breach of warranty. The discrepancy in the length of the south boundary line accounts for an over all difference of 4,915 square feet. On the basis of an expert appraisal of $25.00 per foot of vacant land the Court entered a Final Judgment for Appellees in the amount of $61,438 plus court costs. The *1039 trial court held the Appellant, Jacobs, warranted the dimensions of the property under paragraph three of the deposit receipt contract.
We find that the trial court erred in finding that the Appellant, Jacobs, warranted the dimensions of the property conveyed, when no express warranty to that extent was contained in paragraph three of the deposit receipt contract. In paragraph three of the deposit receipt contract the appellant specifically warranted, "the concrete retaining wall shown on the two aforementioned surveys is the same one now on the property and that the dimensions from the westerly lot limits of said lot to said concrete retaining wall as shown on the 1952 surveys, are approximately the same today." The surveys which are referred to in that portion of paragraph three are the surveys which were attached to the deposit receipt contract and entered into evidence. There was no ambiguity as to which surveys were being referred to as the surveys were attached to the contract and initialed by the parties at the time of the execution of the contract.
This was the sale of "Lots 1, 2, and 3, Block 1, Morang and Parks Subdivision." It was not a sale by acreage or by a metes and bounds description. The Appellee viewed the property prior to execution of the deposit receipt contract.
The only purpose for providing subsequent surveys was stated in paragraph eleven of the contract. The sole purpose of the updated surveys were to furnish a new survey to show the location of improvements and to show any encroachments on the property being conveyed.
The principal portions of paragraph three and paragraph eleven of the deposit receipt are clear and unequivocal and do not warrant the dimensions of the property in question. The Appellee got what he bargained for, to wit; "Lots 1, 2, and 3, Block 1, Morang and Parks Subdivision."
"Courts may not rewrite, alter, or add to the terms of a written agreement between the parties and [they] may not substitute their judgment for that of the parties in order to relieve one from the alleged hardship of an improvident bargain." International Expositions, Inc. v. City of Miami Beach, 274 So.2d 29 (Fla.App.3 1973). In the present case the trial court has in fact altered and added to the terms of the deposit receipt contract between appellant and appellee in providing for an express warranty as to the area of the property to be conveyed. The language contained in the deposit receipt contract is quite explicit as to what in fact was being warranted. "The words found in a contract are to have a meaning attributed to them, and are the best possible evidence of the intent and meaning of the contracting parties." Wilcox v. Atkins, 213 So.2d 879 (Fla.App.2 1968).
As a general rule a contract once entered into may not be unilaterally modified. Tropicana Pools, Inc. v. Boysen, 296 So.2d 104 (Fla.App.1 1974). Here appellee would have the deposit receipt modified by providing that the surveys subsequent to the execution of the deposit receipt contract would modify or change the warranty contained in paragraph three. "Where a contract is simply silent as to a particular matter, that is, its language neither expressly nor by reasonable implication indicates that the parties intended to contract with respect to the matter, the court should not, under the guise of construction, impose contractual rights and duties on the parties which they themselves omitted." Gulf Cities Gas Corporation v. Tangelo Park Service Company, 253 So.2d 744 (Fla.App.4 1971).
Accordingly, the final judgment entered in favor of appellees-plaintiffs, Patrick A. Petrino, Olympia E. Petrino and Christine Romanello, is reversed and the cause remanded to the trial court with directions to enter final judgment in favor of appellants-defendants, Mildred P. Jacobs and Wendell E. Jacobs, and against the appellees-plaintiffs.
REVERSED AND REMANDED WITH DIRECTIONS.
CROSS and ALDERMAN, JJ., concur.